# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE FLOURNOY,<br><br>　　　　　　　　　　Petitioner,<br><br>　v.<br><br>PATRICK COVELLO, Warden, *et al.*,<br><br>　　　　　　　　　　Respondents. | Case No.: 19-cv-01368 BAS (NLS)<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>**(2) DENYING REQUEST FOR EVIDENTIARY HEARING;**<br><br>**AND**<br><br>**(3) DENYING CERTIFICATE OF APPEALABILITY** |

　　　Petitioner Maurice Flournoy is a state prisoner proceeding *pro se* proceeding with an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."). Flournoy challenges his convictions for assault with a deadly weapon and aggravated battery in San Diego Superior Court, Case No. SCE363871. The Court has read and considered the Amended Petition (ECF No. 4), the Answer and Memorandum of Points and Authorities in Support of the Answer (ECF Nos. 8, 8-1), the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **DENIES** the Petition and **DISMISSES** the case with prejudice. The Court also **DENIES** the request for an evidentiary hearing and **DENIES** a Certificate of Appealability.

# I. BACKGROUND

## A. Facts Underlying State Court Convictions

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The state appellate recounted the facts as follows:

> In 2016, Flournoy, the victim D.M. and two other persons in their group were homeless. In the summer of that year, Flournoy got into a confrontation with D.M. During the confrontation, Flournoy threatened D.M. with a knife, but did not stab him at that time. In September 2016, Flournoy got into a confrontation with another homeless person, who accused Flournoy of stealing property. D.M. heard the argument and approached Flournoy. The confrontation escalated with Flournoy threatening D.M. with statements, including: "I'll beat your ass." "If I get the chance, I'll get you." D.M. then struck Flournoy to avoid Flournoy's possible attack. Flournoy fell back against a wall and then grabbed D.M. and pulled him down to the ground. D.M. received a serious stab wound to his abdomen and another stab wound in his back. Flournoy then fled.
>
> . . .
>
> D.M. received a serious injury which resulted in his hospitalization for 13 days.
>
> . . .
>
> Flournoy did not testify or offer any affirmative defense evidence.

(Lodgment No. 15 at 2–3, ECF No. 9-15.)

## B. Procedural History

On March 27, 2017, the San Diego County District Attorney's Office filed a Consolidated Information charging Maurice Shawne Flournoy with one count of assault with a deadly weapon ("Count One"), a violation of California Penal Code § 245(a)(1), one count of battery with serious bodily injury ("Count Two"), a violation of California Penal Code § 243(d), one count of vandalism ("Count Three"), a violation of California Penal Code § 594(a)(b)(1), one count of battery on an officer or emergency personnel

("Count Four"), a violation of California Penal Code § 243(b), one count of resisting an officer ("Count Five"), a violation of California Penal Code § 148(a)(1), and one count of resisting an executive officer ("Count Six"), a violation of California Penal Code § 69. (Lodgment No. 1, Vol. 1 at 13–15, ECF No. 9-1). As to Count One, the information alleged Flournoy had personally inflicted great bodily injury, within the meaning of California Penal Code § 12022.7(a). (*Id.* at 13–14.) The information also alleged that Flournoy had suffered a prior conviction for which he had served a prison term, within the meaning of California Penal Code §§ 667.5(b) and 668, a prior conviction for a serious felony, within the meaning of California Penal Code §§ 667(a)(1), 668 and 1192.7, and a prior "strike" conviction, within the meaning of California Penal Code §§ 667(b)–(i), 1170.12 and 668. (*Id.* at 13–15.) As part of plea negotiations, the District Attorney amended Count Two to include an allegation that Flournoy had personally inflicted great bodily injury within the meaning of California Penal Code § 1192.7(c)(8). (*Id.*) Flournoy pleaded guilty to Count Three after it was reduced to a misdemeanor. Counts Four and Five were dismissed and Flournoy proceeded to trial on the remaining counts. (*Id.*)

Following a jury trial, Flournoy was convicted of all counts and the jury found the great bodily injury allegation to be true. (*Id.* at 185–86.) Flournoy was sentenced to a term of fifteen years and four months in prison. (*Id.* at 223–24.)

Flournoy appealed his conviction to the California Court of Appeal for the Fourth Appellate District. (Lodgment Nos. 13, 14, ECF Nos. 9-13, 9-14.) The state appellate court upheld his conviction in a written opinion. (Lodgment No. 15, ECF No. 9-15.) Flournoy then filed a petition for review in the California Supreme Court. (Lodgment No. 16, ECF No. 9-16.) The state supreme court summarily denied the petition. (Lodgment No. 17, ECF No. 9-17.)

Flournoy next filed a petition for writ of habeas corpus in the San Diego Superior Court. (Lodgment No. 18, ECF No. 9-18.) The Superior Court denied the petition in a written opinion. (Lodgment No. 19, ECF No. 9-19.) He then filed a petition for writ of habeas corpus in the California Appellate Court, which denied the petition in a written

opinion. (Lodgment Nos. 20, 21, ECF Nos. 9-20, 9-21.) Finally, he filed a petition for writ of habeas corpus in the California Supreme Court, which summarily denied the petition. (Lodgment Nos. 22, 23, ECF Nos. 9-22, 9-23.)

Flournoy filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on July 22, 2019 and an Amended Petition on September 16, 2019. (ECF Nos. 1, 4.) Respondent filed an Answer and Memorandum in Support of the Answer on February 20, 2020. (Answer, ECF Nos. 8, 8-1.) Flournoy did not file a Traverse.

## II.   LEGAL STANDARD

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *see Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant

- 4 -

habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75–76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

### III. ANALYSIS

Flournoy raises two grounds for relief in his Amended Petition. In the first ground, he claims trial counsel was ineffective. (Am. Pet. at 6, ECF No. 4.) In the second, he contends his conviction is based on false testimony. (*Id.* at 7.) Respondent contends that first ground is unexhausted and, in any event, is meritless. (Answer at 11–13, ECF No. 8-1.) Respondent argues the state court's resolution of Flournoy's second ground for relief was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (*Id.* at 14–17.)

#### A. Ineffective Assistance of Counsel

In Flournoy's first ground for relief he claims trial counsel was ineffective because she "fail[ed] to conduct a reasonable pre-trial investigation" and she "hired no investigator and did no independent investigation." (Am. Pet. at 6.) Flournoy further claims that counsel "failed to contact and investigate potential witnesses for the defense until the last

moment of trial." (*Id.*)  Respondent argues this claim is unexhausted and, in any event, meritless because Flournoy has presented only "bare allegations" of ineffectiveness, which is insufficient.  (Answer at 11–13.)

Respondent correctly argues that Flournoy's ineffectiveness of counsel claim is unexhausted because he did not raise the claim before the California Supreme Court either on direct appeal or in a state habeas corpus petition.  (*See* Lodgment Nos. 13, 22, ECF Nos. 9-13, 9-22.)  To exhaust state judicial remedies, a California state prisoner must present the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition.  28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. at 129, 133–34 (1987).  A federal court may deny a petition with unexhausted claims, however, if it is "perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  He must also show he was prejudiced by counsel's errors.  *Id*. at 694.  Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Further, *Strickland* requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential."  466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Id*. at 686–87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  *Id*. at 697.

While Flournoy alleges that counsel failed to investigate, did not hire an investigator and did not contact potential witnesses, he does not explain what investigation counsel

should have performed, what information an investigator would have discovered and what witnesses counsel failed to contact. (Am. Pet. at 6.) Without this information, he has not established how counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Flournoy also does not explain how any evidence gained from further investigation by counsel and an investigator would have helped his defense, what the witnesses would have testified to, and how such evidence or testimony would have helped his defense. (*Id.*) He has therefore not established he was prejudiced because he has not shown there is a reasonable probability that the result of his trial would have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 694.

In short, Flournoy's allegation that his counsel was ineffective is conclusory. Conclusory allegations are insufficient to support federal habeas corpus relief. *Jones v. Gomez*, 66 F.3d 199 (9th Cir. 1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Accordingly, he is not entitled to relief as to this claim.

### B. False Testimony

In his second ground, Flournoy argues his conviction was based on false testimony. (Pet. at 7.) After Flournoy was convicted, the El Cajon Police Department received a letter purporting to be from a witness at Flournoy's trial, Thomas Chapman. The letter stated that Chapman "wanted to come clean" and claimed that, contrary to his testimony at trial, he did not see Flournoy with a knife or sharp object in his hand. (*Id.*) Respondent contends the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer at 14–17.)

Flournoy raised this claim in the habeas corpus petition he filed in the California Supreme Court, which summarily denied the petition. (Lodgment Nos. 12, 13, ECF No. 9-12, 9-13.) Accordingly, this Court must "look through" to the last reasoned state court decision addressing this claim. *Ylst*, 501 U.S. at 805–06. In this case, the last reasoned state court decision is the state appellate court's opinion denying the habeas corpus petition he filed in the California Court of Appeal. That court wrote:

> Flournoy is not entitled to habeas corpus relief. Such relief is available when "[f]alse evidence that is substantially material or probative on the issue of guilt or punishment was introduced against a person at a hearing or trial relating to his or her incarceration." (Pen. Code, § 1473, subd. (b)(1).) False evidence is substantially material or probative if there is a reasonable probability that without its introduction the result of the trial would have been different. (*In re Richards* (2016) 63 Cal.4th 291, 312.) Flournoy has not established such a probability. He has not supplied this court with a transcript of the testimony of Chapman or any other witnesses at trial. The opinion on appeal indicates that there was testimony that Flournoy threatened the victim with physical harm, pulled him to the ground, and then inflicted stab wounds that required a 13-day hospitalization. Based on this evidence, even if we assume that Chapman testified falsely at trial that he saw Flournoy with a knife or other sharp object at or near the time of the stabbing, it is not reasonably probable that without Chapman's testimony the jury would not have found Flournoy guilty of assault with a deadly weapon and battery with serious bodily injury. Moreover, "'[i]t has been repeatedly held that where a witness who has testified at a trial makes an affidavit that such testimony is false, little credence ordinarily can be placed in the affidavit . . .'" (*In re Cox* (2003) 30 Cal.4th 974, 1004; see *In re Weber* (1974) 11 Cal.3d 703, 722 ["the offer of a witness, after trial, to retract his sworn testimony is to be viewed with suspicion"].) Here we do not even have an affidavit from Chapman. All that we have is an unsworn, unauthenticated statement that the police faxed to Flournoy's counsel and that appears to be from Chapman. Such an inadmissible statement is insufficient to satisfy Flournoy's pleading burden. (*In re Martinez* (2009) 46 Cal.4th 945, 955-956; *In re Marquez* (2007) 153 Cal.App.4th 1, 11.)

(Lodgment No. 21, ECF No. 9-21 at 2.)

False evidence claims are governed by *Napue v. Illinois*, 360 U.S. 264 (1959). "A claim under *Napue* will succeed when '(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material.'" *Jackson v. Brown*, 513 F.3d 1057, 1071–72 (9th Cir. 2008) (quoting *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005)); *see also Reis-Campos v. Biter*, 832 F.3d 968, 976 (9th Cir. 2016). If there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury[,]" the conviction must be set aside. *Jackson*, 513 F.3d at 1076 (quoting *Hayes*, 399 F.3d at 985).

Flournoy has not established Chapman's testimony was false. As the state court noted, there is no way to verify the letter is actually from Chapman and the assertions in the letter are not made under penalty of perjury. (Am. Pet. at 16.) "The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting

recollections of events, does not establish that the testimony offered at trial was false." *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997).

Moreover, even if Chapman's testimony was false, it was not material. *See Reis-Campos*, 832 F.3d at 976. Mumford, who was the victim of the stabbing, testified he got into an argument with Flournoy, Flournoy grabbed him and they both fell, and when Mumford got up, he saw that he had been stabbed. (Lodgment No. 2 vol. 6 at 46–50, ECF No. 9-7.) Mumford also testified that Flournoy had previously threatened him with a knife about a month before the stabbing. (*Id.* at 47.) Police Officer Jonathan Corrao testified that Mumford's girlfriend Lashane Goodloe told him she saw Flournoy with a knife. (*Id.* at 98.) William Cahill, a District Attorney investigator, interviewed Goodloe after the incident. (Lodgment No. 2 vol. 7 at 9, ECF No. 9-8.) Cahill testified that Goodloe told him Flournoy threated to physically harm Mumford and that she saw a metal object in Flournoy's hand as he ran away from the scene. (*Id.* at 15.) Cahill also testified that Mumford identified Flournoy as the person who stabbed him. (*Id.* at 11–14.) Given that Chapman was not the only witness who identified Flournoy as the perpetrator of the stabbing or who told police Flournoy had a weapon, there is "[no] reasonable likelihood that the [allegedly] false testimony could have affected the judgment of the jury." *Reis-Campos*, 832 F.3d at 976. The state court's denial of this claim was therefore neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See Bell*, 535 U.S. at 694; *Lockyer*, 538 U.S. at 75. Nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). Flournoy is not entitled to relief as to this claim.

### C. Evidentiary Hearing

Flournoy asks for an evidentiary hearing on the first page of his Petition. (Am. Pet. at 1.) Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999); *see also Clark v. Chappell*, 936 F.3d 944, 967–68 (9th Cir. 2019). The provisions of 28 U.S.C. § 2254(e)(2) control this decision:

>>(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
>
>>(A) the claim relies on --
>
>>(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>>(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>>(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West 2006).

In deciding whether to grant an evidentiary hearing, the court must first determine whether a factual basis exists in the record to decide Petitioner's claims. *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (quoting *Baja*, 187 F.3d at 1078). Where the issues raised by the Petitioner can be resolved by reference to the state court record, no evidentiary hearing is required. *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011). If not, the court must "ascertain whether the petitioner has failed to develop the factual basis of a claim in State court." *Insyxiengmay*, 403 F.3d at 670 (internal quotation marks omitted). A failure to develop the factual basis of a claim in state court implies some "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *See Williams v. Taylor*, 529 U.S. 420, 432 (2000). The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437. Flournoy did ask for an evidentiary hearing in the habeas corpus petition he filed in the San Diego Superior Court but not in the habeas corpus petitions he filed in the California Court of Appeal or the California Supreme Court. (Lodgment Nos. 18, 20, 22, ECF Nos. 9-18, 9-20, 9-22.)

Further, the Supreme Court in *Pinholster* held that where habeas claims have been decided on their merits in state court, a federal court's review must be confined to the record that was before the state court. 563 U.S. at 181–82. Flournoy can only proceed to

develop additional evidence in federal court if either § 2254(d)(1) or (d)(2) are first satisfied. *See Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) (stating that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief[]") (citing *Pinholster*, 563 U.S. at 203 n.20). For all the reasons discussed above, Flournoy is not entitled to federal habeas relief pursuant to § 2254(d)(1) or (d)(2). Accordingly, he is not entitled to an evidentiary hearing.

## IV. CONCLUSION

For the foregoing reasons, the Petition and the request for an evidentiary hearing are **DENIED**. Further, Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West 2019). A certificate of appealability will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (West 2019); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court concludes Flournoy has not made the required showing, and therefore a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED: May 11, 2020**

Hon. Cynthia Bashant
United States District Judge